**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**UNITED STATES OF AMERICA**,

Plaintiff,

v.

**AQUATHERM GmbH; AQUATHERM L.P.; CLARK FAMILY HOLDINGS, L.C.; AQUATHERM, INC.; AETNA NA, L.C.; HARRINGTON INDUSTRIAL PLASTICS LLC; and RIDGELINE MECHANICAL SALES LLC**,

Defendants.

Case No. 3:21-cv-335-JR

**OPINION AND ORDER**

Scott Erik Asphaug, United States Attorney, and Carla Gowen McClurg, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Brian M. Boynton, Acting Assistant Attorney General; Ruth A Harvey, Director; and Michael J. Quinn, Daniel J. Martin, and T. Dietrich Hill, Trial Attorneys, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, COMMERCIAL LITIGATION BRANCH, Box 875, Ben Franklin Station, Washington, DC 20044. Of Attorneys for Plaintiff United States of America.

Anne Cohen and Sharlei Hsu, BETTS, PATTERSON & MINES LP, 111 SW Fifth Avenue, Suite 3650, Portland, OR 97204. Of Attorneys for Defendants Aquatherm LP, Aetna NA LC, and Aquatherm, Inc., and specially appearing pending a Motion to Dismiss for Lack of Personal Jurisdiction for Defendant Aquatherm GmbH.

Paul E. Sheely and Mike J. Staskiews, SMITH FREED EBERHARD PC, 111 SW Columbia Street, Suite 800, Portland, OR 97201. Of Attorneys for Defendant Harrington Industrial Plastics LLC.

Ray P. Cox and Micah R. Steinhilb, FORSBERG & UMLAUF PS, 901 Fifth Avenue, Suite 1400, Seattle, WA 98164. Of Attorneys for Defendant Ridgeline Mechanical Sales, LLC.

**Michael H. Simon, District Judge.**

United States Magistrate Judge Jolie A. Russo issued Findings and Recommendation in this case (ECF 66), recommending that the Court deny the motion to dismiss (ECF 46) filed by Aquatherm GmbH (AQ GmbH). Although the Court declines to adopt Judge Russo's conclusion that the Court has specific personal jurisdiction over AQ GmbH based on minimum contacts with Oregon, the Court finds sufficient contacts with the United States to support national jurisdiction under Rule 4(k)(2) of the Federal Rules of Civil Procedure. Accordingly, the Court denies AQ GmbH's motion to dismiss.[1]

## STANDARDS

### A. Review of Findings and Recommendation

Under the Federal Magistrates Act (Act), a court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3). For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* a magistrate judge's findings and recommendations if objection is made, "but not otherwise").

[1] The Court also finds, under LR 7-1(d)(1), that oral argument would not help resolve the pending motion.

Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

**B. Motion to Dismiss for Lack of Personal Jurisdiction**

In a motion to dismiss for lack of personal jurisdiction brought under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving that the court's exercise of jurisdiction is proper. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When resolving such a motion on written materials, rather than after an evidentiary hearing, the court need "only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id*. (quotation marks omitted) (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). Although a plaintiff may not rest solely on the bare allegations of its complaint, uncontroverted allegations must be taken as true. *Id*. In addition, conflicts between the parties over statements in affidavits must be resolved in the plaintiff's favor. *Id.*

## BACKGROUND

As alleged in Plaintiff's Complaint (ECF 1), the United States seeks to recover the cost of replacing defective pipes in a federal building in Portland, Oregon. Between 2009 and 2013, the General Services Administration (GSA) renovated the Edith Green-Wendell Wyatt Federal Building (the Building), an 18-story structure in downtown Portland that houses offices for many federal agencies. The renovation included installation of several new water systems—a system for transporting potable water, a system that uses water to heat and cool the Building, and a rainwater reclamation system. For these water systems, GSA's contractors chose a new type of

plastic pipe, made using random copolymerized polypropylene (PP-R) that was reputed to be less expensive and more environmentally friendly than conventional pipe materials. Compl. ¶ 1.

According to Plaintiff, the PP-R pipes manufactured by AQ GmbH (the AQ GmbH PP-R pipes) used in the Building quickly degraded from the inside. The first of several pipe leaks occurred in March 2018. Since then, the AQ GmbH PP-R pipes allegedly failed another eight times, and Plaintiff contends that they will likely continue to fail because they are defective and unsuitable both for ordinary use and specifically for use in the Building. *Id*. ¶ 2. Plaintiff adds that GSA needs to replace nearly all AQ GmbH PP-R pipes in the Building. GSA has contracted for the part of the replacement project where leaks have already occurred, but GSA has not yet contracted to replace the remaining AQ GmbH PP-R pipes, which Plaintiff contends also is necessary. GSA estimates that the total cost of replacing all AQ GmbH pipes in the Building will exceed $40 million. *Id*. ¶ 3.

In this action, Plaintiff has sued AQ GmbH[2]; Aquatherm L.P.[3]; Aquatherm, Inc.[4]; Aetna NA, L.C.[5]; Harrington Industrial Plastics LLC (Harrington)[6]; and Ridgeline Mechanical Sales

---

[2] AQ GmbH is a foreign business entity organized under the laws of Germany with its principal place of business in Germany. Compl. ¶ 8.

[3] Aquatherm L.P. is a limited partnership organized under the laws of Delaware with its principal place of business in Lindon, Utah. Compl. ¶ 9.

[4] Aquatherm, Inc. is a corporation organized under the laws of Utah with its principal place business in Orem, Utah. Compl. ¶ 10.

[5] Aetna NA, L.C. is a limited liability company organized under the laws of Utah with its principal place of business in Lindon, Utah, and was formerly named "Aquatherm NA, L.C." Compl. ¶ 12.

[6] Harrington is a limited liability company organized under the laws of Delaware with its principal place of business in Chino, California. During the renovation of the Building, Harrington was the local distributor of the Aquatherm PP-R pipes at issue. Harrington is authorized to do business in Oregon. Compl. ¶ 13.

LLC (Ridgeline).[7] Plaintiff asserts claims of breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and unjust enrichment.[8]

**DISCUSSION**

Plaintiff served process on AQ GmbH in Germany by following the provisions of the Convention of the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, also known as the "Hague Service Convention." ECF 46 at p. 3. AQ GmbH then specially appeared and moved to dismiss for lack of personal jurisdiction. In support of its motion, AQ GmbH filed the Declaration of Dirk Rosenberg, a Director of AQ GmbH (ECF 48), and an Amended Declaration of Dirk Rosenberg (Rosenberg Am. Decl.). ECF 52. According to Mr. Rosenberg:

- AQ GmbH "is the manufacturer of the pipe that is alleged to be involved in this litigation."[9]

- AQ GmbH "manufactures Aquatherm pipe exclusively in Germany."[10]

- No part of AQ GmbH's pipe manufacturing process takes place in the United States, and AQ GmbH does not own or lease any offices or any other real property or have any employees in the state of Oregon, does not have a warehouse anywhere in the United States, does not have any sales or marketing representatives or

---

[7] Ridgeline is a limited liability company organized under the laws of Montana with its principal place of business in Bozeman, Montana. Ridgeline is authorized to do business in Oregon. Comp. ¶ 14.

[8] Plaintiff also originally sued Clark Family Holdings, L.C. but has since voluntarily dismissed all claims against that entity. ECF 38.

[9] Rosenberg Am. Decl. (ECF 52) ¶ 4.

[10] Rosenberg Am. Decl. (ECF 52) ¶ 5.

distribution networks in the state of Oregon, and does not market Aquatherm pipe in the state of Oregon.[11]

- Until execution of an Asset Purchase Agreement in December of 2015, AQ GmbH sold Aquatherm pipe to be used for projects in the United States to Aquatherm, Inc., which later became known as "Aquatherm, NA."[12]

- Aquatherm, Inc. and Aquatherm, NA received deliveries of Aquatherm pipe for projects in the United States in one of two ways: (1) Consignment Aquatherm pipe was delivered from AQ GmbH to Aquatherm, NA's Utah warehouse (or to an Aquatherm, NA warehouse location of Aquatherm, NA's choice), and transfer of title was complete when the pipe was taken out of stock at an Aquatherm, NA warehouse; and (2) for non-consignment Aquatherm pipe, the delivery condition was "FOB any European port," and sale and transfer of title of the Aquatherm pipe was complete upon delivery of the pipe to an agreed upon European port.[13]

- Aquatherm, NA and AQ GmbH were separate entities with different operations, management, employees, and places of business.[14]

- Aquatherm, NA's assets were sold under a December 1, 2015, Asset Purchase Agreement to Aquatherm, LP. AQ GmbH and Aquatherm, LP are separate entities with different operations, management, employees, and places of business.[15]

- After the signing of the December 1, 2015, Asset Purchase Agreement, AQ GmbH has sold manufactured Aquatherm pipe to be used for projects in the United States to Aquatherm, LP.[16]

---

[11] Rosenberg Am. Decl. (ECF 52) ¶¶ 6-10.

[12] Rosenberg Am. Decl. (ECF 52) ¶ 12.

[13] Rosenberg Am. Decl. (ECF 52) ¶¶ 12-13.

[14] Rosenberg Am. Decl. (ECF 52) ¶ 14.

[15] Rosenberg Am. Decl. (ECF 52) ¶ 15.

[16] Rosenberg Am. Decl. (ECF 52) ¶ 16.

- The delivery conditions for the Aquatherm pipe sold to Aquatherm LP were essentially the same conditions described for the delivery of pipe to Aquatherm, NA.[17]

- For the Aquatherm pipe claimed to be have been in the Building at issue, Aquatherm, NA or Aquatherm, LP "would have purchased and taken title to that Aquatherm pipe at the European port or the Utah warehouse." AQ GmbH's "involvement with the Aquatherm pipe was completed upon transfer of title to Aquatherm, NA or Aquatherm, LP in Utah or at the European port."[18]

- AQ GmbH provides an express warranty for the Aquatherm pipe that it makes.[19]

For the purposes of resolving AQ GmbH's pending motion to dismiss, the Court accepts all factual assertions made by Mr. Rosenberg in his amended declaration. Accordingly, there is no need for an evidentiary hearing.

In its motion to dismiss, AQ GmbH agrees that Oregon's longarm statute confers personal jurisdiction to the extent permitted by due process and that due process requires that a defendant has certain minimum contacts with the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (cleaned up). AQ GmbH, however, argues that it lacks minimum contracts with Oregon under a theory of either general or specific personal jurisdiction to support personal jurisdiction under Oregon's longarm statute. ECF 46.

In response, the United States asserts that AQ GmbH has sufficient minimum contacts with Oregon to support specific personal jurisdiction. ECF 59. In the alternative, the United

---

[17] Rosenberg Am. Decl. (ECF 52) ¶¶ 16-17.

[18] Rosenberg Am. Decl. (ECF 52) ¶ 18.

[19] Rosenberg Am. Decl. (ECF 52) ¶ 20.

States also argues that even if the Court lacks personal jurisdiction under Oregon's longarm statute, the Court nevertheless has personal jurisdiction over AQ GmbH under Rule 4(k)(2) of the Federal Rules of Civil Procedure. ECF 59 at 25-27. Rule 4(k)(2) "is commonly referred to as the federal longarm statute." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006). That rule provides:

> *Federal Claim Outside State-Court Jurisdiction*. For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2).

In its response to AQ GmbH's motion, Plaintiff also explains that "[t]he purpose of this rule is to prevent a foreign defendant from evading liability under federal law when the defendant has sufficient contacts with the United States as a whole but lacks requisite contacts with any single state to support conventional longarm jurisdiction." ECF 59 at 25. Plaintiff adds that "[t]he minimum-contacts analysis under rule 4(k)(2) is the same as that for state longarm statutes, except that the analysis considers 'contacts with the nation as a whole' rather than only with the forum state." *Id*. at 26. Plaintiff argues that its claim arose under federal common law and that AQ GmbH has sufficient contacts with the United States as a whole to satisfy the minimum-contacts test under Rule 4(k)(2). *Id*. at 26. Plaintiff also states:

> As noted, Aquatherm GmbH has not asserted that it is subject to personal jurisdiction in any other state. Given the federal claims here and its on-going commercial contacts with the United States as a whole, this Court alternatively has specific personal jurisdiction under rule 4(k)(2). Aquatherm GmbH has not contended otherwise.

*Id*. at 27.

In its reply, AQ GmbH opposes both grounds of personal jurisdiction asserted by Plaintiff. As for Rule 4(k)(2), AQ GmbH states that this rule does not provide a basis for personal jurisdiction because the reference to "federal law" in this rule means "if authorized by a federal statute" and there are no federal statutory claims asserted by Plaintiff in this lawsuit. ECF 65 at 7-8 (internal pages 3-4). AQ GmbH offers no other substantive argument in reply to Plaintiff's invocation of Rule 4(k)(2).

In her Findings and Recommendation, Judge Russo concluded that personal jurisdiction existed under Oregon's longarm statute, finding sufficient minimum contacts with Oregon. ECF 66. As for Plaintiff's alternative grounds under Rule 4(k)(2), Judge Russo stated: "In light of the contacts with Oregon listed above, a Rule 4(k)(2) analysis is unnecessary because Rule 4(k)(2) jurisdiction requires that 'the defendant is not subject to jurisdiction in any state's courts of general jurisdiction,' and here Oregon courts may exercise personal jurisdiction over Aquatherm GmbH." *Id.* at 66.

AQ GmbH objects to Judge Russo's Findings and Recommendation. ECF 70. In its objection, AQ GmbH argues that Judge Russo "correctly concluded that the Plaintiff asserts no basis for general personal jurisdiction," but erred by making "factual inferences against AQ GmbH based on mere unsupported allegations alleged by the Plaintiff that were controverted by clear evidence submitted by AQ GmbH." *Id*. at 1-2. AQ GmbH asserts that "[a]bsent the erroneous conclusion of facts, there is no basis to find personal jurisdiction over AQ GmbH." *Id*. at 2. AQ GmbH adds that this Court "is required to reach an independent conclusion as if no decision has been previously rendered." *Id*. at 3 (citing *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989)).

This Court will independently analyze AQ GmbH's motion to dismiss and reach its own conclusion. The Court begins by noting that AQ GmbH denies that it has sufficient minimum contacts with Oregon to support personal jurisdiction under Oregon's longarm statute. For purposes of the pending motion to dismiss, the Court accepts AQ GmbH's argument that it lacks sufficient minimum contacts *with Oregon*.[20] The Court notes, however, that Plaintiff presented an alternative basis for personal jurisdiction over AQ GmbH under Rule 4(k)(2), the federal longarm statute. The Court also notes that in its reply AQ GmbH did *not* assert that it was subject to personal jurisdiction in any other state's courts of general jurisdiction. With this framework, the Court now considers whether Plaintiff has met its burden of establishing personal jurisdiction over AQ GmbH under Rule 4(k)(2).

In *Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 461 (9th Cir. 2007), the Ninth Circuit stated that "Rule 4(k)(2) is not limited to the contours of a state longarm statute," and instead a court may exercise jurisdiction under that rule when three requirements are met. "First, the claim against the defendant must arise under federal law." *Id*. "Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction." *Id*. "Third, the federal court's exercise of personal jurisdiction must comport with due process." *Id*.

Regarding the first requirement, the claim against a defendant must arise under federal law. *Id*. AQ GmbH argues in its reply in support of its motion to dismiss, without citing any legal

[20] This is a close question, and reasonable points have been made on both sides. In the final analysis, however, the Court need not spend much time on this issue based on the unique facts here. If Plaintiff and the Magistrate Judge are correct on the issue of Oregon's longarm statute being satisfied, then this Court has personal jurisdiction over AQ GmbH under Oregon's longarm statute. If, however, AQ GmbH is correct on that question, then, for the reasons explained below, this Court has personal jurisdiction over AQ GmbH under Rule 4(k)(2), the federal longarm statute. Thus, either way, this Court has personal jurisdiction over AQ GmbH.

authority that refers to Rule 4(k)(2), that "federal law" in this rule means "if authorized by a federal statute." ECF 65 at 7 (internal page 3). Although the Ninth Circuit has not yet addressed this issue, a decision from the Fifth Circuit provides useful guidance and rejects AQ GmbH's position.

In *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717 (5th Cir. 1996), the Fifth Circuit reversed a district court's ruling that the federal law "jurisdictional predicate of Rule 4(k)(2)" was limited solely to federal question cases. The specific issue before the court was whether admiralty claims satisfied that jurisdictional predicate. In rejecting the district court's narrow reading of Rule 4(k)(2), the Fifth Circuit looked to the Advisory Committee notes and explained:

> The text of Rule 4(k)(2) does not, by its terms, limit itself solely to federal question cases. Instead, the rule states that it applies to "claims arising under federal law," the plain meaning of which incorporates all substantive federal law claims. The Advisory Committee Notes following Rule 4(k)(2) buttress this argument. Throughout its discussion of the Rule, the Advisory Committee refers to federal law broadly as substantive law, not narrowly as a jurisdictional requirement pursuant to 28 U.S.C. § 1331. For example, the Advisory Committee states that Rule 4(k)(2) "authorizes the exercise of territorial jurisdiction over the person of any defendant against whom is made a claim arising under any federal law if that person is subject to personal jurisdiction in no state." (emphasis added). The use of the word "any" to qualify "federal law" strongly suggests that the Advisory Committee intended Rule 4(k)(2) to reach not just federal question cases under § 1331 but all claims arising under substantive federal law. As the court in *United Trading Company S.A. v. M.V. Sakura Reefer et al*. points out, had the Advisory Committee meant to limit the scope of Rule 4(k)(2) to federal question claims, it clearly could have done so. No. 95–2846, 1996 WL 374154, at *4 (S.D.N.Y. July 2, 1996) (holding that Rule 4(k)(2) does apply to admiralty cases). Instead, it chose to describe the rule with the phrase "any federal law."
>
> *The Advisory Committee concludes its discussion by distinguishing federal law as substantive law distinct from state law, stating that "[t]his narrow extension of the federal reach*

> *applies only if a claim is made against the defendant under federal law*. It does not establish personal jurisdiction if the only claims are those arising under state law or the law of another country. . . ." Had the Advisory Committee intended to narrowly define "federal law" to refer only to subject matter jurisdiction pursuant to § 1331, it would have compared "arising under" jurisdiction to diversity jurisdiction, the other basis for federal court subject matter jurisdiction. Instead, it chose to compare federal law with state law, suggesting that "federal law" is meant to be used in its broader, substantive law sense.

*Id.* at 720-21 (emphasis added). Thus, the relevant question for the first requirement, that the claim arise under federal law, is not whether the claim is based on a federal statute but whether the substantive rule of decision is based on federal law, *rather than state law*.

That test is satisfied here. As Plaintiff states in its response to AQ GmbH's motion to dismiss, federal common law governs commercial transactions by the United States. ECF 59 at 26. In support, Plaintiff cites *United States v. Kimbell Foods, Inc*., 440 U.S. 715, 726 (1979) ("[F]ederal law governs questions involving the rights of the United States. . . ."). Plaintiff adds that unless a federal statute governs a subject, federal common law provides the rule of decision when the United States is the plaintiff, citing *United States v. Little Lake Misere Land Co*., 412 U.S. 580 (1973). In *Little Lake Misere*, the Supreme Court explained:

> There will often be no specific federal legislation governing a particular transaction to which the United States is a party; here, for example, no provision of the Migratory Bird Conservation Act guides us to choose state or federal law in interpreting federal land acquisition agreements under the Act. But silence on that score in federal legislation is no reason for limiting the reach of federal law . . . . To the contrary, the inevitable incompleteness presented by all legislation means that interstitial federal lawmaking is a basic responsibility of the federal courts.

*Id.* at 593. Here, the United States is the plaintiff. Thus, in the absence of an applicable federal statute, the claims will be determined according to "interstitial federal lawmaking" by the federal

courts, *i.e*., federal common law. Thus, Plaintiff satisfies the first requirement under Rule 4(k)(2).

Regarding the second requirement, the Ninth Circuit explained:

> Ordinarily, the plaintiff bears the burden of proving personal jurisdiction over the defendant. However, proving the lack of personal jurisdiction in every state could be quite onerous, and it is the defendant, not the plaintiff, that likely possesses most of the information necessary to do so. *United States v. Swiss Am. Bank, Ltd*., 191 F.3d 30, 40-41 (1st Cir. 1999). Accordingly, we join the Fifth, Seventh, and D.C. Circuits in holding that
>
> > [a] defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there.... If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2). This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit.
>
> *ISI Int'l, Inc., v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001) (citations omitted) . . . . Thus, absent any statement from either Wärtsilä or Wärtsilä Finland that it is subject to the courts of general jurisdiction in another state, the second requirement of Rule 4(k)(2) is met.

*Holland Am. Line*, 485 F.3d at 461 (brackets in original).

AQ GmbH has not made any statement that it is subject to the courts of general jurisdiction in another state. Indeed, in Plaintiff's response to AQ GmbH's motion to dismiss, Plaintiff expressly stated that "Aquatherm GmbH has not asserted that it is subject to personal jurisdiction in any other state," as part of Plaintiff's argument that it has established the requirements of personal jurisdiction under Rule 4(k)(2). ECF 59 at 27. In its reply, AQ GmbH did not deny or otherwise refute this point. Thus, Plaintiff satisfies the second requirement under Rule 4(k)(2).

The third, and final, requirement under Rule 4(k)(2) is that the federal court's exercise of personal jurisdiction comport with due process, considering the defendant's contacts with the United States as a whole. AQ GmbH has purposely availed itself of the U.S. market based on several undisputed facts. As confirmed by the Amended Declaration of Dirk Rosenberg, AQ GmbH sells pipe that it makes in Germany into U.S. markets and delivers that pipe to warehouses in Utah, where AQ GmbH continues to hold title to that pipe until the pipe is "taken out of stock" at the Utah warehouse.[21] That AQ GmbH regularly ships product to the United States and retains title until that product is taken out of stock at a U.S. warehouse likely is enough to support a finding that the third requirement under Rule 4(k)(2) is satisfied. But there is more.

AQ GmbH also is the owner of federal trademark registrations in the U.S. Patent and Trademark Office for use of "aquatherm" and "AQUATHERM GREENPIPE" in the United States for plastic pipe.[22] In considering the application of the federal longarm statute in a case involving an Italian licensor of trademarked products, U.S. District Judge Phyllis Hamilton found that the licensor (EFI) had sufficient contacts for national jurisdiction under Rule 4(k)(2).

> Here, EFI's June 2003 application to the PTO to gain trademark protection in the United States for its "MONSTER" mark constitutes a substantial contact. EFI would be able to sue for protection against allegedly infringing marks based on its trademark registration. The privilege of trademark registration invokes the benefits and protections of trademark law. It is reasonable and does not offend "traditional notions of fair play and substantial justice," *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154, to require EFI to submit to the burden of litigation. For these reasons, the court refuses to extend the government contacts exception to

[21] Rosenberg Am. Decl. (ECF 52) ¶¶ 12-13, 16-17.

[22] Declaration of Michael C. Pfeffer (Pfeffer Decl.) (ECF 60), Exs. 14, 15.

> the facts of this case where jurisdiction over EFI otherwise comports with due process.
>
> The court finds that EFI is subject to personal jurisdiction based on its June 2003 application to the PTO. Because EFI is subject to jurisdiction under Rule 4(k)(2), MCP's request for jurisdictional discovery is denied as moot.

*Monster Cable Prod., Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1010 (N.D. Cal. 2009); *see also Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009) ("It stands to reason that one who has sought and obtained a property interest from a U.S. agency has purposefully availed itself of the laws of the United States."). That AQ GmbH owns a U.S. federal trademark likely is enough to support a finding that the third requirement under Rule 4(k)(2) is satisfied. But, again, there is more.

AQ GmbH advertises its pipe in the United States by exhibiting past projects in the United States on its website.[23] AQ GmbH also modified a catalog for distribution in Canada and the United States "to address issues specific to North America."[24] In addition, AQ GmbH maintains dozens of local Aquatherm "manufacturer's representatives" throughout the United States.[25] Moreover, AQ GmbH campaigned for modifications to U.S. standards and codes to allow the use of its products in the United States.[26] Finally, a director of AQ GmbH took a "sales trip" across the United States to engage with organizations to promote and market AQ GmbH products.[27] In its reply, AQ GmbH challenges many of Plaintiff's purported facts about AQ

---

[23] ECF 59 at 27 n.20.

[24] ECF 59 at 27 n.21.

[25] ECF 59 at 27 n.22.

[26] Pfeffer Decl., Ex. 16 (ECF 60).

[27] ECF 59 at 27 n.23.

GmbH's contacts *with Oregon*, but AQ GmbH did not challenge any of Plaintiff's purported facts showing minimum contacts with the United States as a whole. Thus, Plaintiff satisfies the third, and final, requirement under Rule 4(k)(2). Because Plaintiff satisfies all three requirements of Rule 4(k)(2), this Court has personal jurisdiction over AQ GmbH under the federal longarm statute.

**CONCLUSION**

The Court declines to adopt the Findings and Recommendation (ECF 66) and declines to conclude that the Court has specific personal jurisdiction over Aquatherm GmbH based on minimum contacts with Oregon. The Court, however, accepts Plaintiff's alternative grounds and finds sufficient contacts with the United States as a whole to support personal jurisdiction under Rule 4(k)(2) of the Federal Rules of Civil Procedure. Accordingly, the Court denies Aquatherm GmbH's Motion to Dismiss for Lack of Personal Jurisdiction (ECF 46).

**IT IS SO ORDERED.**

DATED this 5th day of July, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge